UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                              :

ZIP INTERNATIONAL GROUP LLC,        :      20-CV-3356 (ARR) (PK)
                                              :

                    *Plaintiff*,        :

                                              :      **OPINION & ORDER**

       -against-                    :

                                              :

ZENITH FOODS LLC, VADIM SHVARTS, and BORIS  :
FELDMAN,                                        :

                    *Defendants*.      X

------------------------------------------------------------------- 

ROSS, United States District Judge:

In July 2020, plaintiff, Zip International Group LLC ("Zip"), commenced the present action against defendants, Zenith Foods LLC ("Zenith"), Vadim Shvarts, and Boris Feldman. Plaintiff alleges that defendants have imported and distributed products in the United States in violation of the Lanham Act and New York state law. Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, I deny defendants' motion.

## BACKGROUND[1]

Plaintiff is the importer and exclusive authorized distributor of various European specialty foods in the United States. First Am. Compl. ¶¶ 2, 17, ECF No. 33. Among the foods that plaintiff has an exclusive right to sell in this country are Babkini Semechki sunflower seeds, Vkus Goda

---

[1] For the purposes of deciding this motion, I accept as true the following facts, which are drawn from plaintiff's complaint. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

soft drinks, Dworek canned foods, and Bebi baby food.[2] *Id.* ¶ 18. Plaintiff also has trademark registrations for ZIP PREMIUM QUALITY IMPORTED FOOD for wholesale distributorships; VKUS VG GODA for flavored carbonated water; DWOREK for marinated vegetables and fruit; and ZIP INTERNATIONAL GROUP LLC for wholesale distributorships. *Id.* ¶ 19.

According to plaintiff, it has "spent considerable efforts and made enormous investments of time and money in promoting the Products in the United States." *Id.* ¶ 29. These investments include a number of quality control measures put in place for the benefit of U.S. consumers and in an effort to comply with U.S. law. *Id.* ¶¶ 29–32. Specifically, plaintiff claims that it "adheres to the highest standards" for product transportation and storage, in order to ensure that the products "are not exposed to extreme heat and humidity levels, that they have not expired, and [that they] are safe for consumers; that it "sources its products directly from the manufacturers of the products and not through intermediaries"; that it "handles customer relationships" by accepting consumer questions, concerns, and suggestions and, when necessary, replacing products that do not meet expectations; and that it "ensures compliance" with product labeling and facility registration regulations set by the U.S. Food and Drug Administration ("FDA"), including by opening its doors to FDA inspection. *Id.* ¶¶ 30–32, 67. Plaintiff explains that "[t]hese quality control measures matter to consumers a great deal" and that consumers of Eastern European goods in particular tend to purchase products from importers, like plaintiff, whose reputation for quality and safety they can rely on. *Id.* ¶¶ 74–75.

Defendant Zenith is a competing importer and distributor of groceries and beverages in the United States, and defendants Shvarts and Feldman are its principals. *Id.* ¶ 3. Plaintiff alleges that defendants are engaged in the business of selling "gray market goods": goods that are

---

[2] Following the complaint, I use these terms to refer to plaintiff's products.

2

manufactured and sold outside the United States, legally acquired abroad, and then imported and resold in the United States without the authorization of the trademark holder. *See id.* ¶¶ 40–42; *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 241 (2d Cir. 2009).

Among defendants' gray market goods are products that plaintiff believes are confusingly similar to its Dworek, Bebi, Vkus Goda, and Babniki Semechki products. First Am. Compl. ¶ 37. Defendants' allegedly infringing products, purchased in Russia and imported into the United States, resemble plaintiff's products and in some cases bear plaintiff's trademarks. *Id.* ¶¶ 39–40, 49–50, 53–54. But plaintiff claims that defendants' products contain material differences from its own. Plaintiff points specifically to differences in the labels: while plaintiff's products list plaintiff as the importer and contain nutritional information, defendants' products identify Zenith as the importer instead and, in some instances, do not include any nutritional information. *Id.* ¶¶ 48–57. Additionally, plaintiff alleges that defendants' products are not subject to the same "strict storage and transportation conditions" as the products imported by plaintiff, which "causes irreversible damage to [defendants'] product[s] and may even result in [them] being unsafe for human consumption." *Id.* ¶¶ 65–72.

Plaintiff filed suit against defendants in July 2020, bringing claims of trademark infringement, false advertising, and unfair competition under the Lanham Act, as well as unfair competition and unjust enrichment under New York common law. *See* Compl. ¶¶ 49–73, ECF No. 1. Plaintiff later filed an amended complaint raising the same claims, *see* First Am. Compl. ¶¶ 92–118, and defendants moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see* Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 35. Plaintiff opposes the motion. *See* Mem. Opp. Defs.' Mot. Dismiss, ECF No. 36.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding a 12(b)(6) motion, I accept all factual allegations as true and draw all reasonable inferences in plaintiff's favor. *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). I am not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**DISCUSSION**

**I.      The Issues Raised in Plaintiff's Complaint Are Not Precluded.**

Defendants first argue that plaintiff's claims are barred by collateral estoppel. Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem.") 4–6, ECF No. 35-1. Collateral estoppel—also known as issue preclusion—prohibits "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001). Under federal law, collateral estoppel applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288–89 (2d Cir. 2002). "The party asserting collateral estoppel bears the burden of demonstrating that it is entitled to this relief." *Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 93 (2d Cir. 2005) (citation omitted).

Defendants' collateral estoppel argument is based on *Zip International Grp., LLC v. Trilini Imports, Inc.* ("*Trilini II*"), No. 09-CV-2437 (JG), 2011 WL 2132980 (E.D.N.Y. May 24, 2011).

In that case, Zip filed a complaint against Trilini Imports ("Trilini"), accusing Trilini of purchasing sunflower seeds processed by OOO Troll Company ("Troll") in Russia and reselling them in the United States, in contravention of a written agreement between Zip and Troll giving Zip exclusive license to use and enforce Troll's trademarks in North America. *See Zip Int'l Grp. v. Trilini Imports, Inc.* ("*Trilini I*"), No. 09-CV-2437 (JG), 2010 WL 648696, at *1 (E.D.N.Y. Feb. 22, 2010). According to Zip, Trilini was "implicitly and falsely representing that [its] seeds [we]re the same product sold by Zip" when, in fact, "the seeds Zip s[old] [we]re a superior product, seasoned with higher quality ingredients according to [a] special recipe for the North American market." *Id.* at *2. The district court denied Trilini's motion to dismiss the complaint: because Zip alleged that Trilini used the Troll mark, to which Zip had an exclusive license, to sell seeds seasoned with lower quality ingredients than Zip's, the court found that Zip had adequately stated a claim for actionable infringement based on the theory that Trilini's resold seeds were not "genuine" under the Lanham Act. *Id.* at *3–4; *see id.* at *3 ("The sale of [gray market] goods is actionable by the exclusive United States . . . because consumers may unwittingly purchase the goods on the basis of the domestic markholder's reputation only to be disappointed when the product does not meet their expectations."). But while it denied Trilini's 12(b)(6) motion, the court later granted its motion for summary judgment. *Trilini II*, 2011 WL 2132980, at *9. By the close of discovery, Zip was unable to produce any evidence that Trilini's seeds were inferior in quality, that they were subjected to different quality control standards, or that they were materially different from Zip's seeds—in other words, Zip had failed to prove, as a matter of law, that Trilini's seeds were not "genuine." *Id.* at *3–5. Concluding that Zip had not established genuine issues of material fact supporting its allegations, the court dismissed its claims. *Id.* at *9.

Defendants' argument here is that plaintiff's lawsuit is precluded by *Trilini* because *Trilini*

decided the "present dispositive issue – whether buying trademarked goods in the stream of commerce and merely reselling them without changing the packaging, product or trademark constitutes a violation of federal trademark law or the parallel provisions of New York law." Defs.' Mem. 5–6. But this represents too broad a reading of both the issue in *Trilini* and the issues raised in plaintiff's complaint. "While the term[] '"issue" must be understood broadly enough to prevent repetitious litigation of what is essentially the same dispute,' issue preclusion applies only 'where a party [seeks] to litigate twice an issue arising from *virtually identical facts*,' in other words, where 'the factual differences [are] of no legal significance.'" *Koenig v. City of New Haven*, No. 16-CV-514 (JCH), 2017 WL 631190, at *5 (D. Conn. Feb. 15, 2017) (alteration in original) (emphasis added) (quoting *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 157 (2015)). In *Trilini*, the dispositive issue was not whether, as a general matter, reselling unaltered goods violates federal or state law;[3] rather, it was whether, based on the specific evidence before the court, Zip had demonstrated that the specific seeds Trilini sold were altered in a way that ran afoul of the Lanham Act—that is, that they were subject to different quality control standards or had material differences from Zip's seeds. *See Trilini II*, 2011 WL 2132980, at *3–5. Though the answer there was "no," the present case involves different products and trademarks and different allegations as to why defendants' products are not genuine. Thus, the question of whether defendants have deviated from plaintiff's quality control standards or distributed materially different products is one that was not—and could not have been—answered in the *Trilini* court's order dismissing that case. *See Montana v. United States*, 440 U.S. 147, 159 (1979) ("[C]hanges in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action

---

[3] Indeed, had this been the issue, the case likely could have been decided on Trilini's motion to dismiss. *See Bel Canto Design v. MSS Hifi, Inc.*, 837 F. Supp. 2d 208, 222–23 (S.D.N.Y. 2011) (describing first sale doctrine).

raising the same issues."); *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) ("Use of collateral estoppel 'must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged.'" (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 599–600 (1948))). Defendants have therefore failed to prove that *Trilini* resolved an "identical issue" to the one before me.

Because the relevant issues here differ from those decided in *Trilini*, collateral estoppel does not bar plaintiff from litigating its claims.

## II.   Plaintiff Has Adequately Stated Its Claims for Trademark Infringement and Unfair Competition

Defendants also urge me to dismiss plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that plaintiff has offered "only conclusory allegations of federal trademark infringement, false designation of origin under federal law, and parallel violations of New York State law." Defs.' Mem. 1.[4]

### A.   Plaintiff plausibly alleges that defendants' conduct constitutes trademark infringement and unfair competition under the Lanham Act.

"Under the Lanham Act, a plaintiff alleging trademark infringement must demonstrate that (1) it has a valid mark that is entitled to protection and that (2) the defendant's actions are likely to cause confusion with that mark." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d

---

[4] Though defendants frame their motion as one to dismiss the entire action, *see id.* at 1, they do not address plaintiff's claim for false advertising under the Lanham Act or its claim for unjust enrichment under New York state law. Accordingly, I treat their motion as a partial motion to dismiss and discuss only those claims for which defendants have offered arguments: the claim for federal trademark infringement, the federal unfair competition claim, and the state unfair competition claim. *Cf. Liberty Ins. Corp. v. Brenman*, No. 14-CV-5892 (CBA), 2016 U.S. Dist. LEXIS 26360, at *4–5 n.3 (E.D.N.Y. Feb. 29, 2016) (treating defendants' motion to dismiss, which did not address one of the issues raised in the complaint, as a partial motion to dismiss).

Cir. 2020) (citation and quotation marks omitted). A plaintiff alleging unfair competition pursuant to § 1125(a)(1)(A) of the Lanham Act must meet the same standard. *See Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014); *N. Food I/E, Inc. v. Apollo Food Int'l Inc.*, No. 19-CV-574 (MKB), 2020 WL 9607108, at *10 (E.D.N.Y. Aug. 14, 2020). Because defendants do not dispute the validity of plaintiff's marks, the focus of my analysis is on the second prong of the test: likelihood of confusion. In conventional infringement cases, courts in the Second Circuit determine likelihood of confusion by considering the factors set out in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961). *N. Food*, 2020 WL 9607108, at *10. "But those factors are less helpful in the context of gray-market goods, which [generally] use identical marks, are sold in the original packaging, and are obtained legitimately from the manufacturer." *Abbott Lab'ys v. Adelphia Supply USA*, No. 15-CV-5826 (CBA), 2015 WL 10906060, at *5 (E.D.N.Y. Nov. 6, 2015); *see also Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 309 (S.D.N.Y. 2007) ("Gray goods cases, however, do not fit easily into the Lanham Act's specified causes of action for infringement.").

Typically, a defendant who merely resells trademarked goods without the trademark holder's consent is not liable for infringement, under the first sale doctrine. *Energizer Brands, LLC v. My Battery Supplier, LLC*, No. 19-CV-6486 (AMD), 2021 WL 1176105, at *3 (E.D.N.Y. Mar. 29, 2021); *see also Hallmark Licensing, LLC v. Dickens, Inc.*, No. 17-CV-2149 (SJF), 2020 WL 6157007, at *4 (E.D.N.Y. Oct. 21, 2020) ("Where the goods at issue are found to be genuine, there is no violation of the Lanham Act, despite the subject goods having been resold without the trademark holder's consent."). "The rationale for this doctrine is that 'trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold.'" *Bel*

*Canto Design, Ltd. v. MSS Hifi, Inc.*, 837 F. Supp. 2d 208, 222 (S.D.N.Y. 2011) (quoting *NEC Elecs. v. CAL Cir. Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987))). However, the first sale doctrine applies only where the resold product is, in fact, genuine. *Id.* at 22–23; *Abbott Lab'ys*, 2015 WL 10906060, at *5. The Second Circuit has established that "'goods are not genuine' and their distribution could constitute infringement 'if they do not conform to the trademark holder's quality control standards,' or 'if they differ materially from the product authorized by the trademark holder for sale.'" *N. Food*, 2020 WL 9607108, at *12 (quoting *Zino Davidoff*, 571 F.3d at 243) (citations omitted). Courts in this circuit have established two distinct standards based on this language: the "material differences test" and the "quality control test." *Id.*; *Trilini II*, 2011 WL 2132980, at *4. These tests, which typically come up in gray market goods cases, "both serve as proxies for the fundamental question under the Lanham Act: whether consumer confusion is likely." *Abbott Lab'ys*, 2015 WL 10906060, at *5.

### 1. The Material Differences Test

Under the material differences test, the sale of gray market goods "violates the Lanham Act if the goods (1) are not intended to be sold in the United States, and (2) are materially different from the authentic goods that are authorized for sale in the U.S. market." *Helene Curtis v. Nat'l Wholesale Liquidators, Inc.*, 890 F. Supp. 152, 158 (E.D.N.Y. 1995). "A material difference can be '*any* difference between the [plaintiff's] product and the allegedly infringing gray good that consumers would likely consider relevant when purchasing a product.'" *Trilini II*, 2011 WL 2132980, at *4 (quoting *Societe Des Produits Nestle, S.A. v. Casa Helvetica, Inc.*, 982 F.2d 633, 641 (1st Cir. 1992) (emphasis added)). The Second Circuit has observed that, in the context of gray market goods, a "low threshold of materiality" applies, with courts "requiring no more than a slight difference [that] consumers would likely deem relevant when considering a purchase of

the product." *Zino Davidoff*, 571 F.3d at 246.

Plaintiff claims that defendants purchased their products in Russia and that those products are not intended or authorized for sale in the United States, which satisfies element one of the material differences test. First Am. Compl. ¶¶ 40–43. As for element two, at least with respect to some of defendants' allegedly infringing products, plaintiff's claims meet the "low threshold of materiality." "Differences in product packaging have been found to constitute material differences in a variety of gray goods cases." *Dan-Foam*, 500 F. Supp. 2d at 313 (collecting cases). Specifically, where a plaintiff alleges that the defendant's products exclude or alter nutritional information required for U.S. goods and articulates why that change would be relevant to consumers, courts have found that such a showing suffices to demonstrate a material difference. *See, e.g.*, *Novartis Animal Health US, Inc. v. Abbeyvet Exp. Ltd.*, 409 F. Supp. 2d 264, 267 (S.D.N.Y. 2005) (finding that the absence of FDA-required information and labeling was a material difference); *Helene*, 890 F. Supp. at 159 (finding material differences where the labels of the allegedly infringing products did "not contain certain information regarding product ingredients" and where the court found that "the ingredients of a product are often relevant to consumers in determining whether to purchase a product"); *PepsiCo, Inc. v. F & H Kosher Supermarket, Inc.*, 11-CV-425 (RRM), No. 2011 WL 6181907, at *5 (E.D.N.Y. Aug. 26, 2011), *report and recommendation adopted,* 2011 WL 6179269 (E.D.N.Y. Dec. 12, 2011) (finding that the defendant's products were materially different because the labeling did not "comply with the FDA regulations or the labeling standards followed by Plaintiff and its authorized bottlers in the United States"); *Abbott Lab'ys*, 2015 WL 10906060, at *6–7 (finding material differences where the defendant's product's labels "contain[ed] unexplained and unfamiliar symbols, atypical warnings, international units of measurement, and different languages). *Contra TechnoMarine SA*

*v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 491 (S.D.N.Y. 2012) (granting the defendant's motion to dismiss where the plaintiff's complaints "fail[ed] to address why differences in packaging [were] material"). Here, plaintiff alleges that the Babkini Semechki sunflower seeds and Bebi baby food it sells include nutritional information on the packaging—as required by the FDA—while defendants' versions of these products omit that information. First Am. Compl. ¶¶ 53–57, 60. Plaintiff explains in its amended complaint that the presence of this information is important to consumers, because "[c]onsumers rely on nutritional information labels to identify nutritional facts and [the] presence/absence of harmful additives that may be legal in Eastern Europe but are not permitted in the United States," and the absence of this information "indicates . . . that the product has not undergone testing and may be harmful." *Id.* ¶¶ 59–60. I find that the differences in the products' nutritional labeling and the accompanying explanation of why these differences matter satisfy the "material differences test" that "distinguishes genuine from non-genuine gray goods." *Abbott Lab'ys*, 2015 WL 10906060, at *6.

### 2. The Quality Control Test

The quality control test dictates that "[g]oods . . . that do not meet the trademark owner's quality control standards will not be considered genuine goods, and their sale will constitute trademark infringement." *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994). "To be entitled to relief, a trademark holder is not required to adopt the most stringent quality control procedures available," *N. Food*, 2020 WL 9607108, at *13, as "it is the control of quality," not the quality of the goods themselves, "that a trademark holder is entitled to maintain," *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986). "Rather, the 'trademark holder must demonstrate only that: (i) it has established legitimate, substantial, and nonpretextual quality control procedures; (ii) it abides by these procedures; and (iii) the non-conforming sales will

diminish the value of the mark.'" *N. Food*, 2020 WL 9607108, at \*13 (quoting *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996)).

Plaintiff here has listed a number of specific standards it has in place to ensure the safety and quality of its products: according to the complaint, plaintiff's products are tested at FDA laboratories, stored to ensure that they "are not exposed to extreme heat and humidity levels, that they have not expired, and [that] they are safe for consumers," and manufactured and processed at facilities that are registered with the FDA and subject to inspection. First Am. Compl. ¶¶ 28, 30, 34, 35, 67. Plaintiff also asserts that it has procedures in place to handle product recalls, respond to consumer questions and concerns, and replace defective products when necessary. *Id.* ¶ 31. Though defendants object that these claims are "conclusory" and vague, *see* Defs.' Mem. 6–8, at this point in the litigation, plaintiff's allegations suffice to establish that it has "legitimate, substantial, and nonpretextual quality control procedures" in place and that it abides by those procedures. *See PepsiCo*, 2011 WL 6181907, at \*4 (finding that practices that allowed the plaintiff to monitor product shipment, storage, and shelf life were legitimate quality control procedures); *Abbott Lab'ys*, 2015 WL 10906060, at \*7 (finding that the plaintiff's efforts to "monitor[] its market, field[] customer inquiries, and investigate[] complaints" demonstrated that it followed "established, legitimate, substantial, and nonpretextual quality-control measures"); *Krasnyi v. Oktyabr, Inc. v. Trilini Imps.*, No. 05-CV-5359 (DGT), 2007 WL 1017620, at \*8 (E.D.N.Y. Mar. 30, 2007) (finding that the plaintiff adequately established its quality control procedures where the plaintiff claimed it was "charged with ensuring specific quality control standards" by the product manufacturer); *cf. Zino Davidoff*, 571 F.3d at 244–46 (holding that systems the plaintiff had in place to help detect counterfeits and identify defective products and ensure effective product recall were legitimate quality control procedures). *Contra TechnoMarine*, 905 F. Supp. 2d at 490–91

(finding that the plaintiff's allegation that its products underwent "a strict quality control procedure," without more, was insufficient to survive a motion to dismiss). Plaintiff also claims that defendants do not abide by these procedures, which creates a risk that their products, unlike plaintiff's, may be damaged, made "unsafe for human consumption" or even deliberately tampered with. First Am. Compl. ¶¶ 44–45, 69–73. Taking these allegations as true, I find that the inferior quality of defendants' similar-looking and allegedly infringing products, caused by defendants' substandard quality control procedures, is likely to diminish the value of plaintiff's marks. *See Krasnyi Oktyabr*, 2007 WL 1017620, at *8 (denying the defendants' motion to dismiss where the plaintiff alleged that the defendants "sell product which is not properly stored, which is expired and which in countless other ways fails to comply with [the plaintiff's] quality control standards"); *see also Abbott Lab'ys*, 2015 WL 10906060, at *7 ("[D]efendants' sale of goods outside [the plaintiff's quality control system, through which plaintiff investigated customer complaints and, when necessary, ordered targeted recalls] will diminish the value of [the plaintiff's] mark," since the plaintiff would be unable to execute targeted recalls). Taking its allegations as true, I find that they support plaintiff's cause of action under the quality control test.

***

As plaintiff has adequately alleged violations of both the material differences test and the quality control test, I deny defendants' motion to dismiss its Lanham Act claims.

### B.  Plaintiff plausibly alleges that defendants' conduct constitutes unfair competition under New York common law.

"The elements of an unfair competition claim under New York law are 'identical to a Lanham Act claim, save for the additional requirement that plaintiff show defendant's bad faith." *Abbott Lab'ys v. Adelphia Supply USA*, Nos. 15-CV-5826 (CBA), 17-CV-6002 (CBA) 2019 WL 5696148, at *42 (E.D.N.Y. Sept. 30, 2019) (quoting *Carson Optical, Inc. v. Prym Consumer USA,*

13

*Inc.*, 11 F. Supp. 3d 317, 335–36 (E.D.N.Y. 2014)); *see also TechnoMarine*, 905 F. Supp. 2d at 494; *Peek & Cloppenburg KG v. Revue, LLC*, No. 11-CV-5967 (DAB), 2012 WL 4470556, at \*6 (S.D.N.Y. 2012). Bad faith must be pleaded "to make out a cause for common law unfair competition because it is 'central' to the 'essence of an unfair competition claim under New York law,' which 'is that the defendant has misappropriated the labors and expenditures of another.'" *Krasnyi*, 2007 WL 1017620, at \*10.

Courts in this circuit have repeatedly found that a defendant acted in bad faith where that defendant "receive[d] a cease and desist letter but continue[d] the infringing conduct." *Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc.*, 104 F. Supp. 3d 371, 381 (S.D.N.Y. 2015) (quoting *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 600 (S.D.N.Y. 2010)); *N. Food*, 2020 WL 9607108, at \*14; *Krasnyi*, 2007 WL 1017620, at \*10; *see also Sola Franchise Corp. v. Sola Salon Studios Inc.*, No. 14-CV-0946 (JS), 2015 WL 1299259, at \*11 (E.D.N.Y. Mar. 23, 2015) (finding that a complaint sufficiently alleged bad faith where the plaintiff verbally warned the defendant that it was infringing on the plaintiff's mark and the defendant refused to change the allegedly infringing name). Here, plaintiff alleges that it "previously contacted [d]efendants regarding [their] improper and illegal sale of Grey Market Goods in 2019 and 2020," specifically by sending cease and desist letters to Shvarts and Feldman, which the two ignored. First Am. Compl. ¶¶ 82, 84. At this early stage, these allegations suffice to demonstrate defendants' bad faith in importing and selling their allegedly infringing products. I therefore deny defendants' motion to dismiss the common law unfair competition claim.

## CONCLUSION

For the foregoing reasons, I deny defendants' motion to dismiss the amended complaint.

SO ORDERED.


_____/s/_____

Allyne R. Ross
United States District Judge


Dated:          November 18, 2021
                Brooklyn, New York